No. 20-2506

---

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

LHO CHICAGO RIVER, L.L.C.,

Plaintiff-Appellee,

v.

ROSEMOOR SUITES LLC, PORTFOLIO HOTELS & RESORTS, LLC, and
CHICAGO HOTEL, LLC,

Defendants-Appellants.

---

Appeal from The United States District Court
for the Northern District of Illinois, Eastern Division
Case No. 1:16-cv-6863
The Honorable Judge Charles P. Kocoras

---

**BRIEF AND REQUIRED SHORT APPENDIX OF
DEFENDANTS -APPELLANTS, ROSEMOOR SUITES, LLC, PORTFOLIO
HOTELS & RESORTS, LLC and CHICAGO HOTEL, LLC**

Alain Villeneuve
Duane Morris LLP
190 S. LaSalle St., Suite 3700
Chicago, IL 60603
(312) 499-6739
(312) 277-3967
AVilleneuve@duanemorris.com

Attorney for Appellants

**ORAL ARGUMENT REQUESTED**

# DISCLOSURE STATEMENT

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 20-2506

Short Caption: LHO Chicago River, L.L.C. v. Rosemoor Suites, LLC, et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    Rosemoor Suites, L.L.C., Portfolio Hotels & Resorts, L.L.C., Chicago Hotel, L.L.C.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    Vedder Price PC, Duane Morris LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    n/a

---

Attorney's Signature: s/ Alain Villeneuve    Date: 25 Aug 2020

Attorney's Printed Name: Alain Villeneuve

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ✓    No

Address: 190 S. LaSalle St. Suite 3700, Chicago, Illinois, 60603

Phone Number: 312-499-6739    Fax Number:

E-Mail Address: avilleneuve@duanemorris.com

rev. 12/19 AK

i

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ............................................................. 1

STATEMENT OF THE ISSUES ................................................................ 3

STATEMENT OF THE CASE / FACTS ................................................... 5

SUMMARY OF ARGUMENT ................................................................ 15

ARGUMENT ........................................................................................... 18

    A.    ISSUE (A): THE DISTRICT COURT ERRONEOUSLY
        WEIGHED THE EVIDENCE ................................................... 18

    B.    ISSUE (B): THE DISTRICT COURT APPLIED THE WRONG
        STANDARD ........................................................................... 20

    C.    ISSUE (C): THE DISTRICT COURT FAILED TO CONSIDER
        THE TOTALITY OF THE CIRCUMSTANCES .................................. 22

        1.    Appellee Attacked Under Common Law and Had No
                Presumption of Ownership, Validity or Enforceability .............. 23

        2.    Appellee Filed This Case Ignoring The Binding *Platinum*
                Precedent ...................................................................... 25

        3.    Appellants own Chicago Hotel LLC and dba Hotel Chicago and
                Illinois Law Forces Hotels To Use DBA's ................................... 28

        4.    The District Court Also Ignored Evidence of Past Pattern of
                Protection & Published Evidence of Non-Registrability ............ 29

        5.    Appellee Ignored Cautions And Pushed Ahead ......................... 30

        6.    The District Court Ignores Its Own Words ................................ 31

        7.    Conclusion ...................................................................... 31

    D.    ISSUE (D): THE DISTRICT COURT ERRONEOUSLY ADDED
        ARGUMENTS RATHER THAN RELYING ON EVIDENCE ............. 32

    E.    ISSUE (E): UNDER ANY STANDARD OF REVIEW, THIS
        CASE STANDS OUT FROM OTHERS AND IS EXCEPTIONAL ....... 34

        1.    THE STANDARD OF REVIEW .................................................. 34

(a) If This Court Finds The District Applied A
Subjective Test, The Standard Is "Clear Error or De
Novo" Review ................................................................. 34

(b) Otherwise the Standard Is "No Reasonable Person"....... 35

2. OCTANE IS NOT THAT COMPLICATED – THIS IS A CASE
THAT CLEARLY STANDS OUT FROM OTHERS BOTH ON
THE WEAKNESS OF THE LEGAL/FACTUAL CASE AND THE
LITIGATION CONDUCT .......................................................... 36

(a) The Court Admits Litigation Conduct Was Bad –
The Email Shows Bad Faith Intent at Filing And
No Prefiling Analysis Was Conducted ............................ 37

(b) In Denying The Injunction, The District Court Did
Not Mince Words Creating An Unrebutted
Presumption The Case Is Weak And Stands Out
From Others .................................................................... 38

(c) The Damming Email Must Be Admitted For What
It Says............................................................................. 39

(d) The District Court Found This Litigation Was
"Bad"............................................................................... 41

(e) The Totality of the Circumstances Shows This Case
is Exceptional ................................................................. 43

CONCLUSION.......................................................................................... 44

# TABLE OF AUTHORITIES

## Federal Cases

*BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081 (7th Cir. 1994) ...................... 35

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005) ............................................................................ 36

*Curtis v. Thompson*, 840 F.2d 1291 (7th Cir. 1988) .................................................. 11

*Frentz v. Brown*, 876 F.3d 285 (7th Cir. 2017) ......................................................... 35

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079 (7th Cir. 2008) ................................................................. 38

*Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 112 F. Supp. 3d 888 (D. Minn. 2015) ...................................................................................... 7

*Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 127 F. Supp. 3d 1004 (D. Minn. 2015) ................................................................................ 46

*Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, No. 0:09-cv-00319 (D. Minn. Swept. 6, 2011) ........................................................................ 44

*Intex Recreation Corp. v. Team Worldwide Corp.*, 77 F. Supp. 3d 212 (D.D.C. 2015) ................................................................................. 10, 21

*LHO Chicago River, L.L.C., v. Joseph Perillo, et al.*, 942 F.3d 384 (7th Cir. 2019) ........................................................................................ *Passim*

*LHO Chicago River LLC, v. Rosemoor Suites, LLC*, 1:16-cv-6863 (N.D. Ill. Feb. 3, 2017) ............................................................................. 8, 26

*Lynch v. City of Milwaukee*, 747 F.2d 423 (7th Cir. 1984) ....................................... 35

*Mendez v. Republic Bank*, 725 F.3d 651 (7th Cir. 2013)..................................... 12, 33

*Meridian Ins. Grp., Inc.*, 128 F.3d 1111, 1115 (7th Cir. 1997)............................. 38-39

*Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.* ..................................................... 36

*Octane Fitness LLC. v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014) ........................................................................................ *Passim*

*Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722 (7th Cir. 1998)........................................................................ *Passim*

*In re Rovell*, 194 F.3d 867 (7th Cir. 1999) .................................................... 35

*United States v. United States Gypsum Co.*, 333 U.S. 364 (1948) ........................... 35

**Federal Statutes**

15 U.S.C. § 1057(b) ........................................................................ 23

15 U.S.C. § 1057(c)(1) .................................................................... 25

28 U.S.C. § 1291 ............................................................................ 2

28 U.S.C. § 1331 ............................................................................ 1

28 U.S.C. § 1338 ............................................................................ 1

LANHAM ACT, 15 U.S.C. § 1051 *et seq.* .................................................. 1

LANHAM ACT, 15 U.S.C. § 1117(a) .................................................... *Passim*

**State Statutes**

Illinois Assumed Name Act (805 ILCS 180/1-20) ........................................... 7, 28, 43

# JURISDICTIONAL STATEMENT

This is an appeal from an order of the United States District Court for the Northern District of Illinois, Eastern Division. The District Court had jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338, as the action arose under the Lanham Act, 15 U.S.C. § 1051 et seq. The District Court granted Plaintiff's motion to dismiss with prejudice (Dkt. 159)[1] and entered judgment ending this case (Dkt. 160) on February 21, 2018. More than a year later, an order denying Defendants' first motion for fees in which the District Court applied the *Burford* bad faith standard. (Dkt. 175). After a successful appeal, on December 3, 2019, the Seventh Circuit Court of Appeals vacated the order and remanded the case to the District Court for a determination of fees under a more generous non-subjective standard. (Dkt. 183). On February 26, 2020, Defendants' – Appellants' filed a renewed motion for fees under 15 U.S.C. § 1117(a). (Dkt. 194). On July 15, 2020, applying yet again a subjective standard, the District Court denied, once again, Defendants' – Appellants' request for fees. (Dkt. 198). A Notice of Appeal was timely filed on August 11, 2020 (Dkt. 199) and is an appeal from a final order or judgment

---

[1] Citations to the record appear as follows in the brief:
"Appx. <no.>" – refers to the Appendix
"App. I <no.>" – refers to the first appeal in this case (Appl. Case No. 17-1323)
"App. II <no.>" – refers to the second appeal in this case (Appl. Case No. 19-1848)
"App. III <no.>" – refers to this appeal (Appl. Case No. 20-2506)
"Dkt. <no.>" – refers to the appealed District Court case (Case No. 1:16-cv-06863)

of the District Court that disposes of all parties' claims. This Court has jurisdiction over the denial of fees post final decision under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

The Lanham Act (15 U.S.C. § 1117(a)) provides that in "exceptional" cases, a prevailing party may be awarded attorneys' fees. In 2014, the U.S. Supreme Court gave life to this section in *Octane Fitness, LLC. v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014). In 2019, the Seventh Circuit in the second appeal (Appl. No. 19-1848) of now three appeals in this case confirmed that the standard in *Octane* applied to Lanham Act cases and offered guidance. *LHO Chicago River, L.L.C., v. Joseph Perillo, et al.*, 942 F.3d 384 (7th Cir. 2019). *Octane* relaxes the standard by which exceptional cases are determined. Prior to *Octane*, exceptional cases required essentially a frivolous case or a bad faith filing. After Appellants' successful appeal, the law of the Seventh Circuit only requires an exceptional case to be one that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane,* 572 U.S. at 554. The analysis for determining whether a case is exceptional is conducted using the totality of the circumstances and evidence is reviewed only by a preponderance of the evidence. *Id.*

On July 15, 2020, the District Court, on remand, again rejected Appellants' request to designate this case exceptional. (Dkt. 198). Appellants ask this Court to consider the following five issues (listed for convenience hereafter as "Issue (a)-(e)").

Issue (a): By applying a " foreclose of possibility" standard to the key evidence, has the District Court misapplied the "preponderance of the evidence" standard as part of the decision to deny fees under 15 U.S.C. § 1117(a)?

Issue (b):     By applying a "good faith/bad faith" logic permeating the decision and used to determine if this case is exceptional, has the District Court misapplied the objective standard of *Octane* as part of the decision to deny fees under 15 U.S.C. § 1117(a)?

Issue (c):     Has the District Court misapplied the *Octane* 'totality of the circumstances' standard by ignoring more than half of the arguments and circumstances offered by the Defendants – Appellants as to the analysis of the weakness of the legal / factual case filed as part of the decision to deny fees under 15 U.S.C. § 1117(a)?

Issue (d):     Has the District Court abused its discretion by *sua sponte* adding and factoring in unrelated arguments as part of the 'totality of the circumstances' standard as part of the decision to deny fees under 15 U.S.C. § 1117(a)?

Issue (e):     Under either a "clear error" or a more stringent "no reasonable person" standard does this case stand out from others in the field of Trademark Law?

## STATEMENT OF THE CASE / FACTS

In 2014, the Supreme Court resolved Circuit disagreements under 15 U.S.C. § 1117(a).[2] Prior to *Octane*, a prevailing party had to prove bad faith or frivolousness on the part of the non-prevailing party, as this was the understanding given to the term "exceptional." Also, the Courts would use a clear and convincing standard of evidence. The grant of fees was rare as it essentially rose to a culpability standard and in cases in which a Plaintiff dismisses for failure to won a mark, proving culpability was nearly impossible absent extensive discovery. The Seventh Circuit confirmed *Octane* applied to both Patent Act cases and Lanham Act cases alike. Under the revised standard in *Octane*, a prevailing party simply only has to show by a preponderance of the evidence and under the totality of the circumstances that the case stands out from others.

A non-prevailing party no longer required needs to be found to be "the bad guy" but only having filed or litigated a case that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane*, 572 U.S. at 554. Appellants offered nothing short of twenty 'circumstances' or arguments with supporting evidence to the District Court to demonstrate that this case stands out from others. Appellee did not challenge

---

[2] See *Octane Fitness, LLC. v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

Appellants' facts or evidence and offered no evidence, instead limiting itself to attorney argument. The following table summarizes these twenty 'circumstances' grouped by type (e.g. weakness of legal / case arguments / weakness of factual case arguments / joint arguments / litigation arguments) and indicating whether such circumstance was reviewed by the District Court.

| | | Circumstance | Reviewed (Y/N) |
|---|---|---|---|
| | | **Weakness of Legal Case** | |
| Weakness[3] | | No U.S. or State Issued or Pending applications/registrations asserted by Appellee (e.g. only a Common Law claim) (Appx. A-135). | No |
| Weakness | | Evidence similar marks (a) HOTEL NOB HILL, (b) HOTEL MALIBU, (c) THE HOTEL @ FIFTH AVENUE, and (d) HOTEL CALIFORNIAN all rejected by U.S. Patent and Trademark Office as descriptive showing that Appellee's asserted Hotel Chicago mark is commonly known to be descriptive and weak. (Appx. A-138, fn 12). | No |
| Weakness | | Legal precedent at the Circuit level show semi-generic marks like Hotel Chicago are notoriously weak and subject to danger during review. (Appx. A-135, fn 7). | No |
| Weakness | | Three weeks before case filed, U.S. Patent and Trademark Office rejected Appellant's own request for 'Hotel Chicago' as unworthy of protection. (Appx. A-138, 172-183). | No |
| | | **Weakness of Factual Case** | |
| Weakness | | The District Court found after a full day hearing that 'Hotel Chicago' not to be a 'mark' and at most a "weak descriptive mark" with no secondary meaning. (Appx. A-134, quoting Dkt. 96, pp. 30-31, 33). | Yes |
| Weakness | | The District Court noted the weakness of the case by | No |

---

[3] The District Court included some weakness-related arguments as part of the review of litigation misconduct.

| | | Circumstance | Reviewed (Y/N) |
|---|---|---|---|
| | | stating "[t]his, indeed, is 'an uphill battle' for which LHO has yet to enlist." (Appx. A-134, quoting Dkt. 96). | |
| **Weakness** | | **Full chart showing current case does not meet any of the prongs of controlling *Platinum* precedent. (Appx. A-139-40) (See Chart below)(precedential weight not discussed).** | **No** |
| Weakness | | Lack of evidence such as short time of use, no consumer surveys, no consumer testimony. (Appx. A-134, quoting Dkt. 96). | Yes |
| Weakness | | Hotel previously branded and registered weakening new brand penetration in market (House of Blues Hotel® - US 2,370,089 & Hotel Sax® - US 3,436,801)(Appx. A-134, fn 5). | No |
| Both Weakness of Case & Litigation Misconduct | | | |
| Weakness / Litigation | | Email & Marketing Plan where Appellee's Vice-President admits Hotel Chicago cannot be protected describing a desire to bluff ownership. (Appx. A-135-37). | Yes |
| Litigation / Weakness | | Defendants – Appellants secure Chicago Hotel LLC, dba Hotel Chicago (Illinois organization) multiple years before Appellee filed this case. (Appx. A-137, 218-221). | No |
| Weakness / Litigation | | Illinois Assumed Name Act (805 ILCS 180/1-20) requires a hotel to secure a dba and Defendants had the dba, not Plaintiff. (Appx. A-141, fn. 15). | No |
| Weakness / Litigation | | This case analogized to the *Octane* remand (*Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 112 F. Supp. 3d 888, 895 (D. Minn. 2015)) that was found to be exceptional. (*See, e.g.*, Appx. A-137). | Yes. |
| Litigation Misconduct | | | |
| Litigation | | Mr. Joseph Perillo included as original defendant for no legal reason. (Appx. A-142). | Yes |
| Litigation | | Disparaging and useless bed bugs testimony given for no reason in trademark case. (Appx. A-142). | Yes |
| Litigation | | Useless COO testimony and failure to provide good faith disclosures. (Appx. A-143-44). | Yes generally |
| Litigation | | Corporate 30(b)(6) representative was not knowledgeable about noticed topics. (Appx. A-144-45). | Yes generally |
| Litigation | | Appellee's harassment of one of Appellant's witness. (Appx. A-146-47). | Yes generally |
| Litigation | | Appellee's refusal to give covenant not to sue despite previous agreement. (Appx. A-148). | Yes |
| Litigation | | Appellee's conduct amounts to "trademark bully" litigation. (Appx. A-150). | No |

In the table above, the strangest/strongest argument is bolded and was further delineated by Appellants and is reproduced again below for reference. (Appx. A-139-40)

| | *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722 (7th Cir. 1998) | *LHO Chicago River LLC, v. Rosemoor Suites, LLC et al.*, 1:16-cv-6863 |
|---|---|---|
| **Nature:** | PLATINUM for mortgage services. | HOTEL CHICAGO for hotel services located in the city of Chicago. |
| **Type of Mark:** | Descriptive. | Descriptive / generic on face. |
| **Rights Held at Filing:** | No U.S. or State Registrations, only Common Law rights. | No U.S. or State Registration, only relied upon Common Law rights. |
| **Use:** | 3 years | <u>Less than</u> 3 years |
| **Confusion:** | 25 Clients, 5 calls, 3 industry experts | <u>Less than</u> 25 clients, no calls, no industry experts. "LHO only recorded 17 instances of confusion, yielding 0.02% confusion rate." (Dkt. 96, p. 32). |
| **Advertising:** | More than $649,000 in promotional expenditure, a $150,000 billboard, $2,000 monthly to operate and 5,900 mortgages totaling approximately $700,000. | "Of these sums, LHO contributed "$300,000 in brand awareness marketing" of "Hotel Chicago" specifically." (Dkt. 96, p. 4). |
| **Consumer Testimony & Survey** | None. | None. |
| **Stage of Request:** | Preliminary Injunction | Preliminary Injunction |

With respect to Appellants' <u>Issue (a)</u> presented above, *Octane* warrants that evidence is reviewed by the District Court under a preponderance of the evidence standard. *Octane*, 572 U.S. at 557. Appellants offered an unchallenged email from Plaintiff – Appellee's own Vice-President. It stands for the fact that Plaintiff – Appellee itself believed it had no mark and no brand to enforce and not even get it. (Appx. A-136). In the appealed order, the District Court wrote "[w]e note that this email gives some reason for pause. However, this evidence does not <u>foreclose the possibility</u> that LHO had a good-faith belief that it acquired secondary meaning for the mark in the time since the email and marketing plan were published." (Appx. A-8) (emphasis added). The District Court continued, "[d]efendants next argue that the depositions were 'riddled with abuse.' Defendants say that LHO's witnesses lacked personal knowledge of important information, were evasive, and that LHO repeatedly questioned a defense witness about an unrelated criminal matter. Defendants argue that this was abusive and wasteful. LHO contends these actions are 'rather commonplace discovery complaints.' While these actions were certainly bad, we do not believe they are so egregious and reprehensible to make the case 'stand out' from others and merit fee-shifting." (Appx. A-11). Here, the Court seems to place a strange burden. Appellee's conduct is admitted as "bad" but the unrebutted evidence does not appear to be admitted by a preponderance of the evidence for what it is, litigation misconduct and uncommon litigation. The *Octane* standard is "stands out from others … or the unreasonable manner in which the

case was litigated." *Octane Fitness, LLC. v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). The District Court's treatment of the evidence is in error.

With respect to Appellants' <u>Issue (b)</u> presented above, the District Court erroneously applied a subjective analysis, "[w]here a party sets forth some <u>good faith</u> argument in favor of its position, it will generally not be found to have advanced 'exceptionally meritless' claims." (Appx. A-6 citing *Intex Recreation Corp. v. Team Worldwide Corp.*, 77 F. Supp. 3d 212, 217 (D.D.C. 2015) (emphasis added)). "We note that this email gives some reason for pause. However, this evidence does not foreclose the possibility that LHO had a <u>good-faith belief</u> that it acquired secondary meaning for the mark in the time since the email and marketing plan were published." (Appx. A-8) (emphasis added). "We do not believe that Perillo was sued in <u>bad faith</u>." (Appx. A-10) (emphasis added). The *Octane* standard specifically moves away from bad faith yet this opinion exclusively relies upon a good faith / bad faith analysis.

With respect to Appellants' Issue (c) presented above, the District Court ignored a large number of key arguments rather than considering such arguments under an appropriate 'totality of the circumstances' inquiry. The District Court did not consider all circumstances or grouped them together as litigation abuses when they additionally or alternatively show that the case as filed was weak legally and factually. Although *Octane* requires consideration of all factors under a "totality of the circumstances" analysis, the District Court ignored the following circumstances.

- Appellee alleged a rare Common Law trademark infringement case;

- The case was filed in disregard to a binding and controlling precedent;

- Appellants owned Chicago Hotel LLC and the dba Hotel Chicago well before the case was filed;

- Illinois law makes it illegal for Appellee to operate a hotel as 'Hotel Chicago' unless it secured the dba for Hotel Chicago;

- The expression 'Hotel Chicago' stood rejected by the U.S. Patent and Trademark Office before the case was filed;

- Appellee had a past pattern of filing for trademark protection and yet did not file for 'Hotel Chicago';

- Legal determinations show similar descriptive marks are weak both in Court and at the U.S. Patent and Trademark Office; and

- The District Court ignored its own words such that there was not a "better than negligible"[4] chance to win and this case was fatally weak, "[r]egarding secondary meaning, however, Magistrate Judge Cox noted that LHO 'appears to have an uphill battle.' This, indeed, is 'an uphill battle' for LHO, and it has yet to enlist." (Appx. A-77).

---

[4] The Seventh Circuit has stated that a plaintiff seeking a preliminary injunction in connection with alleged trademark infringement must demonstrate a "better than negligible" chance of success on the merits among consideration of other equitable factors. *Curtis v. Thompson*, 840 F.2d 1291, 1296 (7th Cir. 1988).

With respect to <u>Issue (d)</u> presented by Appellants above, the District Court erroneously injected its own factors that have no legal consequence on this case. For example, the District Court dismissed Appellee's request for a preliminary injunction and correctly quoted, "that consumer confusion does not exist within the scope of an infringement claim when the mark is not entitled to trademark protection." (Appx. A-88 quoting *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., I*nc., 149 F.3d 722, 729 (7th Cir. 1998). But two years later, in rejecting Appellants' request for fees, the District Court wrote "LHO also provided evidence that it owned the mark, had priority to the mark, and evidence of numerous instances of customer confusion…. *Platinum* at 728. LHO's evidence ultimately fell short at the preliminary injunction stage, but its arguments and evidence were not so exceptionally weak so as to make this case 'stand out.'" (Appx. A-7). The District Court's use of the confusion evidence is legally in error, confusion is irrelevant as a matter of law absent a mark to enforce. Furthermore, it shows a lack of investigation by Appellee and the use of an erroneous bad faith standard in the District Court's order. The District Court also discussing the Magistrate's work offered, "[t]his 'requires the district judge to decide the case based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion.'" (Appx. A-62 quoting *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). So while the District Court's order found that the Magistrate's Report (Dkt. 60) had "no presumptive weight" (probably since she did not benefit from all the evidence and the preliminary

injunction evidentiary hearing) the District Court now writes, "In fact, Magistrate Judge Cox believed that the preliminary injunction should have been granted, showing that the case was not unmeritorious. Accordingly, Defendants have not proven that LHO's case was exceptionally weak or frivolous." (Appx. A-7). The District Court also erroneously applied an "unmeritorious" standard and not simply the "uncommon" standard as outlined in *Octane*.

With respect to Issue (e), an exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case by considering the "totality of the circumstances." *LHO Chicago River, L.L.C., v. Joseph Perillo, et al.*, 942 F.3d 384, 388 (7th Cir. 2019). The District Court admitted that the litigation conduct of Appellee was "bad." (Appx. A-11). The email of Appellee's vice-president admitting a lack of trademark rights was admitted by the District Court as giving "some reason for pause." (Appx. A-8). Appellee made no pre-filing investigation. (Appx. A-9).

When analyzed with the proper standard of evidence and under a totality of the circumstances, this case stands out from others. The District Court agreed with the weakness of the case when it stated "Magistrate Judge Cox noted that LHO 'appears to have an uphill battle.' This, indeed, is 'an uphill battle' for LHO, and it has yet to enlist." (Appx. A-77). Appellants listed twenty reasons why this case

'stands out' from others, yet not all were considered in reaching the District Court's decision.  For these reasons, the District Court's decision should be reversed.

## SUMMARY OF ARGUMENT

Old habits die hard. Acting on the U.S. rule where each litigant pays its fees, Courts have for decades hesitated in shifting fees against a litigant even if the case was weak. The District Court, for decades applied a subjective standard in trademark cases which mirrors most civil cases. Despite receiving clear direction on remand to review the earlier decision under *Octane* (*LHO Chicago River, L.L.C., v. Joseph Perillo, et al.*, 942 F.3d 384 (7th Cir. 2019)), the District Court returned to old ways, and erroneously did not follow the direction outlined by the U.S. Supreme Court in *Octane*  The order of the District Court should be reversed at the risk of rendering *Octane* toothless in this Circuit.

Justice Sotomayor, in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014), shifted the landscape and created a more flexible and generous standard. An exceptional case must simply 'stand out' from the others under the totality of the circumstances on the legal/factual weakness of what was filed or the litigation must be uncommon. Applying a bad faith / good faith or egregious standard voids the Supreme Court guidance.

This case is, frankly, the weakest "trademark" case anyone could ever file.[5] Appellee filed a Common Law claim benefitting from no presumptions for a newly rebranded hotel known in Chicago as the House of Blues Hotel® then HOTEL

---

[5] Arguably only asserting a generic word against a competitor would be weaker.

SAX®. The expression (e.g. Hotel Chicago for a hotel in Chicago) was noted as very weak by the District Court itself, the Trademark Office and Courts. The Appellee ignored a binding Circuit precedent which articulates what (if any) evidence and/or use is sufficient for these weak descriptive expressions to acquire secondary meaning. This Appellee's case did not meet a single prong of the precedent and was doomed as a matter of law. To add insult to injury, evidence offered showed that Appellee's management knew the expression was not registrable but the Court bent over backwards to give the Appellee the benefit of the doubt, including relying on attorney argument over documentary evidence. Appellants offered nothing short of fifteen other reasons why this case, as filed, was 'laughably weak' when looked at from a trademark standpoint. The District Court ignored evidence and circumstances presented by Appellants including a violation of an Illinois statute by Appellee and ignorance of ownership of a dba by Appellants concerning the disputed name.

*Octane* stands for the notion that a person playing Texas Hold-Em Poker can aggressively move all-in with the worst and weakest hand possible but such action is taken at the player's risk of losing more than just one hand. Players can always bluff. Under *Octane*, the strength of the hand matters (i.e. if the player holds a pair of aces versus a sad two-seven combo). Under *Octane*, a poker hand must "stand out" from others for fees to be granted. Here, the Appellee went in blind, clueless, and was unable to even meet the "mere possibility of victory" of an injunction. It had no registered mark, it's own management knew it had no case, and as a matter

of law the District Court found the expression weak and the litigation conduct "bad." Even if the District Court found each of these factors to individually be of no consequence, the totality of the circumstances in this case demonstrate that this was no run of the mill case. Appellants called Appellee's bluff and must be held to face the consequences of this exceptional case.

# ARGUMENT

## A. ISSUE (A): THE DISTRICT COURT ERRONEOUSLY WEIGHED THE EVIDENCE

There is no disagreement, "[t]he prevailing party must prove that the case is exceptional by a preponderance of the evidence." (Appx. A-5 quoting *Octane*, 572 U.S. at 557–558). The District Court erred by not appropriately weighing the evidence presented by the parties in response to Appellant's request for attorneys' fees. The District Court's order (Dkt. 198) did not consider much of the evidence presented by Appellants nor did it give proper weight to Appellant's evidence when nothing other than attorney argument was offered by Appellee.

Appellants offered a damming email from Appellee to demonstrate that Appellee brought the case knowing that it had no chance of success on the merits. (*See* Appx. A-135-36). The email from Appellee's own Vice-President, at a minimum, shows extreme disregard for common sense at filing and express knowledge the expression was so weak, it could not be protected.

The email produced by the Appellee reads in part: "As you know, because we cannot trademark the name Hotel Chicago, our best protection is to start using it to build name equity… Ted said that most operators will assume the new name is protected… Our risk is that someone else wants to do this and we have a rush to the market." (Appx. A-136). Weighing this damning evidence, the District Court concluded "[w]e note that this email gives some reason for pause. However, this evidence does not <u>foreclose the possibility</u> that LHO had a good-faith belief that it

acquired secondary meaning for the mark in the time since the email and marketing plan were published." (Appx. A-8).

The standard used by the District Court is not "preponderance of the evidence" but "beyond a mere possibility" and is based only on attorney argument. No affidavit is offered by Appellee suggesting the District Court's generous read is even possible. Such a conclusion is clearly in error. The District Court concluded that it is "possible" that Appellee did not have an ulterior motive to file this case. No evidence was presented by Appellee to support this conclusion. Instead, the email, by a preponderance of the evidence (since no evidence to the contrary was presented), shows evidence of bad faith at filing.

Later, the District Court continues, "[d]efendants next argue that the depositions were 'riddled with abuse.' Defendants say that LHO's witnesses lacked personal knowledge of important information, were evasive, and that LHO repeatedly questioned a defense witness about an unrelated criminal matter. Defendants argue that this was abusive and wasteful. LHO contends these actions are 'rather commonplace discovery complaints.' While these actions were certainly bad, we do not believe they are so egregious and reprehensible to make the case 'stand out' from others and merit fee-shifting." (Appx. A-11 quoting *Octane*, 572 U.S. at 554).

In Appellee's response (Dkt. 196), Appellee offers no explanation other than the conduct of Appellee was not so egregious to merit fee shifting. (Appx. A-354). What is lost in the conclusory explanation in the District Court's opinion is that the

very evidence of the state of mind of the Appellee regarding the email of Appellee's vice-president could not be ascertained by Appellants because of the evasion by Appellee. Indeed, the properly noticed 30(b)(6) representative did not know anything about the selection of Appellee's trademark despite this being a clearly defined topic in Appellants' notice of deposition. (Appx. A-144-45). To require Appellants to have more evidence of Appellee's state of mind is tantamount to condoning the evasive litigation conduct of Appellee during discovery. Furthermore, attorney argument cannot supplant documentary evidence.

Under *Octane*, wrongful uncommon litigation conduct can be the basis for designating a case exceptional under the Lanham Act. The District Court was convinced that Appellee's conduct is "bad." No evidence is provided to rebut the evidence of Appellants. Proving "bad" conduct surely is sufficient to prove by a preponderance "wrongful uncommon litigation." In the above, if the evidence is taken by a 'preponderance' it will be more likely than not to show bad faith at filing, that this Appellee had no case and the mark was knowingly so weak it could not be protected. As a whole, the totality of the circumstances supports a finding of an exceptional case.

## B.    ISSUE (B): THE DISTRICT COURT APPLIED THE WRONG STANDARD

"[W]e think it fair to assume that Congress did not intend rigidly to limit recovery of fees by a [Lanham Act] defendant to the rare case in which a court finds that the plaintiff acted in bad faith, vexatiously, wantonly, or for oppressive reasons… . <u>Something less than 'bad faith,' we believe</u>, suffices to mark a case as

'exceptional.'" *LHO Chicago River, L.L.C., v. Joseph Perillo, et al.*, 942 F.3d 384, 387 (7th Cir. 2019) quoting *Octane*, 572 U.S. at 555 (emphasis added).

Returning to the email in Issue (a) discussed above, the District Court wrote "[w]e note that this email gives some reason for pause. However, this evidence does not foreclose the possibility that LHO had a good-faith belief that it acquired secondary meaning for the mark in the time since the email and marketing plan were published." (Appx. A-8) (emphasis added). The District Court used a good faith analysis that deviates from the standard required under *Octane*. The District Court continues, "[w]here a party sets forth some good faith argument in favor of its position, it will generally not be found to have advanced 'exceptionally meritless' claims." (Appx. A-6 citing *Intex Recreation Corp. v. Team Worldwide Corp.*, 77 F. Supp. 3d 212, 217 (D.D.C. 2015)). The "exceptionally meritless" claim standard is not in *Octane* nor is good or bad faith standard.

The District Court similarly injects other requirements that are not delineated in *Octane*. The District Court concluded, "[a]ccordingly, we do not believe the email and marketing plan show that LHO believed the case was frivolous when the case was filed or the case was brought for an improper purpose." (Appx. A-8). The District Court also stated, "[w]e do not believe that Perillo was sued in bad faith." (Appx. A-8) (emphasis added). The Court finds that since Mr. Joseph Perillo (a known businessman in Chicago) was a principal of the sued organizations, adding his name was not bad faith litigation. This is only a branding and trademark case. When a party sues Amazon.com, the famous Jeff Bezos should not be added as

a party if the case is for a simple trademark issue. No rebuttal evidence was offered as to why Perillo was added. *Octane* made it clear that bad faith is not required and the Seventh Circuit expressly held that "something less than bad faith" can support an award of fees. *LHO Chicago River*, 942 F.3d at 387. Yet here, at multiple places in the opinion, the District Court continues to require that Appellants show there was bad faith. The District Court returned to the old discarded subjective standard. For this additional reason, the District Court's decision is in error and should be reversed.

## C. ISSUE (C): THE DISTRICT COURT FAILED TO CONSIDER THE TOTALITY OF THE CIRCUMSTANCES

The District Court, in the short opinion, wrestled between the substantive strength of the position and the unreasonable litigation. Most circumstances raised by Appellants were pushed wrongly into litigation conduct. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *LHO Chicago River,* 942 F.3d at 386 quoting *Octan*e, 572 U.S. at 554 (emphasis added). Under *Octane*, an exceptional case can be one that stands out based on the substantive strength of a party's litigating position or litigation conduct. The District Court failed to truly consider the former (i.e. the DRAKE HOTEL is a strong mark in Chicago while HOTEL CHICAGO is the weakest possible expression).

The District Court failed to recognize that weak or very weak cases in the context of trademark litigation are worthy of being designated as exceptional under *Octane*. If a restaurant on the shore of a lake is descriptively called "Shore Restaurant" the name is weak under the Lanham Act. If the same restaurant is called a suggestive name like "Sunset Restaurant" the name could be stronger. Appellants pointed to nothing short of twenty different 'circumstances' supported by evidence or law (See table above in Statement of Facts). The District Court ignored the following circumstances that were presented by Appellants that are relevant to the strength component of the analysis required under *Octane*.

1.    Appellee Attacked Under Common Law and Had No<br>Presumption of Ownership, Validity or Enforceability

Under the Lanham Act, any party holding a certificate of registration owns a legally rebuttable presumption of ownership, validity and enforceability of a mark.[6] Had a certificate been attached to the Complaint, the District Court could safely assume LHO Chicago River LLC owned this mark, and "Hotel Chicago" was valid and enforceable. As indicated by the District Court in its denial of Appellee's request for a preliminary injunction, "[s]ince LHO 'does not own a registration but

---

[6] "A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate." 15 U.S.C. § 1057(b).

instead is only asserting common law rights,' it 'does not benefit from the Lanham Act's[ ] presumptions of ownership, validity of the mark, and enforcement rights.' Thus, to ultimately prevail, LHO must prove ownership of the would-be 'Hotel Chicago' mark, that it is entitled to protection, and that Defendants' use of 'Hotel Chicago' is likely to cause confusion among consumers." (Appx. A-63) (internal citations omitted).

A party asserting Common Law trademark rights has the initial burden of showing (a) ownership, (b) validity, and (c) enforceability. A Common Law plaintiff, as was Appellee here, holds none of these key presumptions. A Common Law case is weaker than a registered case as it requires a higher degree of proof on the Complainant.[7] A Common Law plaintiff's case is inherently vulnerable to attack and is more likely to *stand out* from others under the totality of the circumstances. The Complaint in this case alleges the Appellants (and not Appellee) filed applications for HOTEL CHICAGO for hotel services.[8] (Dkt. #1, ¶ 27). Under the Lanham Act, Appellants (now registered) own a constrictive date of use, not Appellee.[9] There are dozens of reasons why a Common Law plaintiff can ultimately

_____

[7] In an eviction case, some leases are in writing while others oral. Courts understand the additional burden placed upon litigants of oral contracts.

[8] Issued as U.S. Registration No. 6,171,495 for hotel services on Supplemental Registry with 2/17/2016 date of filing.

[9] Contingent on the registration of a mark on the principal register provided by this chapter, the filing of the application to register such mark shall constitute

(Continued…)

be found not to own any valid and enforceable rights. This circumstance is precisely what happened here as well as in *Platinum*.[10] This important and critical factor is absent from the totality of the circumstance analysis as to the weakness of the legal case.

> 2. Appellee Filed This Case Ignoring The Binding *Platinum* Precedent

Appellants attacked the secondary meaning / validity of Appellee's asserted mark. This was a slam dunk case thanks to the unique Common Law binding precedent of *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 728 (7th Cir. 1998). Back in 1998, a party Platinum Home Mortgage Corporation asserted the Common Law word PLATINUM for home mortgages. While no reasonable minds can question that HOTEL CHICAGO is descriptive (or even generic), the poor Plaintiff in *Platinum* could reasonably be shocked to discover "platinum" was descriptive and learn it had no mark or now had to prove validity. In the *Platinum* binding and controlling precedent, the Seventh Circuit Court of

_____

(Continued…)

constructive use of the mark, conferring a right of priority, nationwide in effect, on or in connection with the goods or services specified in the registration against any other person except for a person whose mark has not been abandoned and who, prior to such filing -(1) has used the mark …" 15 U.S.C. § 1057(c)(1).

[10] The District Court found the expression HOTEL CHICAGO was not a mark and it had no secondary meaning. (Appx. A-66).

Appeals looked at six prongs in deciding there was no "secondary meaning" and denied a preliminary injunction. The factual table below compares each of these prongs and illustrates clearly how none favored Appellee in this case.

| | *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722 (7th Cir. 1998) | *LHO Chicago River LLC, v. Rosemoor Suites, LLC et al.*, 1:16-cv-6863 |
|---|---|---|
| **Type of Mark:** | PLATINUM descriptive. | HOTEL CHICAGO descriptive. |
| **Filing:** | Common Law rights. | Common Law rights. |
| **Use:** | 3 years | Less than 3 years |
| **Alleged Confusion:** | 25 Clients, 5 calls, 3 industry experts | Less than 25 clients, no calls, no industry experts. "LHO only recorded 17 instances of confusion, yielding 0.02% confusion rate." (Appx. A-86). |
| **Advertising:** | More than $649,000 in promotional expenditure, a $150,000 billboard, $2,000 monthly to operate and 5,900 mortgages totaling approximately $700,000. | "Of these sums, LHO contributed "$300,000 in brand awareness marketing" of "Hotel Chicago" specifically." (Appx. A-58). |
| **Consumer Testimony & Survey** | None. | None. |

The District Judge, in this case, denied Appellee's request for a preliminary injunction, compared Appellee's evidence to that of *Platinum* and made it clear the evidence is ridiculously low. (Appx. 84-87).

In the District Court's denial of fees that is the subject of this appeal, this dead-on precedent and thus the resulting weakness of this case is missing from the analysis. The District Court commented on Appellee's litigation conduct and rephrases:

> LHO provided evidence of "significant, widespread marketing efforts, global promotion, and sales volume" to demonstrate that the mark acquired secondary meaning. LHO also provided evidence that it owned the mark, had priority to the mark, and evidence of numerous instances of customer confusion. While, as Defendants argue, LHO used the mark for a short period of time and had no consumer surveys or testimony, "length of time by itself is not a determinative factor," and the lack of consumer survey evidence is not fatal. *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 728 (7th Cir. 1998). LHO's evidence ultimately fell short at the preliminary injunction stage, but its arguments and evidence were not so exceptionally weak so as to make this case "stand out." (Appx. A-7).

The District Court's reasoning is more general. Appellants cannot explain the District Court's reluctance to indicate or at least consider the weakness of Appellee's case when considered against the back drop of *Platinum*. A case filed against a binding precedent from the Seventh Circuit, one where no factor meets the controlling precedent is weak to a point where a Rule 11 motion could be filed. It is impossible to conceive of a weaker case to file than one that requires the court to ignore binding precedent.

3.   Appellants own Chicago Hotel LLC and dba Hotel Chicago and Illinois Law Forces Hotels To Use DBA's

While Appellee is LHO Chicago River LLC, Appellants offered evidence on January 3, 2013, years before any priority date or filing date that Appellants formed an Illinois entity Chicago Hotel, LLC (File 04233441). (Appx. A-219-21). Defendants secured the dba 'Hotel Chicago.' (Appx. A-220). Appellants also pointed to an Illinois statute mandating a dba in Illinois for the Appellee's hotel to operate under this name:

805 ILCS 180/1-20. (a) A limited liability company or a foreign limited liability company admitted to transact business or making application for admission to transact business in Illinois may elect to adopt an assumed name that complies with the requirements of Section 1-10 of this Act except (a)(1). (a-5) As used in this Act, "assumed name" means any name other than the true limited liability company name, except that the following do not constitute the use of an assumed name under this Act: (1) A limited liability company's identification of its business with a trademark or service mark of which the company is the owner or licensed user. (b) Before transacting any business in Illinois under an assumed limited liability company name or names, the limited liability company shall, for each assumed name, execute and file in duplicate an application setting forth all of the following: (1) The true limited liability company name. (2) The state or country under the laws of which it is organized. (3) That it intends to transact business under an assumed limited liability company name. (4) The assumed name that it proposes to use. (c) The right to use an assumed name shall be effective from the date of filing by the Secretary of State until the first day of the anniversary month

of the limited liability company that falls within the next calendar year evenly divisible by 5.

Appellee had no right to use this name on its hotel. This Illinois law is evidence of a lack of investigation, lack of effort and weakness of the name is ignored by the District Court as to the weakness of Appellee's case is critical and demonstrates the complete reckless disregard by the Appellee as it moved forward with this case. In contrast, Appellants did things the right way. Appellants secured the name for its organization, secured the dba, filed trademark applications. All of this information was publicly available and a simple internet search away.

4.    The District Court Also Ignored Evidence of Past Pattern of Protection & Published Evidence of Non-Registrability

In the *Platinum* precedent for mortgage services, that poor party arguably had no clue that its asserted mark was not available for protection and was weak. Here, Appellee had every indication that its case was exceptionally weak. Appellants offered the Certificates of Registration of the previous branding for Appellee's same hotel once named HOUSE OF BLUES HOTEL® later rebranded HOTEL SAX®. (House of Blues Hotel® - US 2,370,089 & Hotel Sax® - US 3,436,801.) This is evidence of a sophisticated party and a pattern of filing and securing protection on the name of this hotel in the past. This is evidence (meeting the preponderance of the evidence standard) that Appellee, by not filing for trademark protection, knew protection was not available. Hotel Chicago simply was not a mark and that's why it was not filed. (Appx. A-165-69). This evidence

demonstrates that consumers once knew this hotel as HOUSE OF BLUES HOTEL® while others once knew the same location as HOTEL SAX® is highly relevant to the secondary meaning and how customers know the location. Nevertheless, this evidence was not considered in the District Court's opinion. Appellee's decision to rebrand this hotel every couple of years greatly weakens this brand.

Appellants also offered evidence of a formal rejection by the U.S. Patent and Trademark Office of the mark HOTEL CHICAGO days before the filing of this case. (Appx. A-173-75). These were all red flashing lights the mark was weak and not enforceable. The District Court did not review this evidence as part of the legal weakness case.

### 5.  Appellee Ignored Cautions And Pushed Ahead

Also ignored by the District Court are other legal precedents (one from the Seventh Circuit) that other highly problematic cases (i.e. ALOE for cream) can result in lack of validity, genericness, or non-enforceability. (Appx. A-135). Evidence was given of four other similar marks filed at the trademark office rejected and not enforceable. Defendants – Appellants showed that HOTEL NOB HILL, HOTEL MALIBU, THE HOTEL @ FIFTH AVENUE, and HOTEL CALIFORNIAN all were rejected by Trademark Office as descriptive. (Appx. A-138, fn. 12). Anyone with a computer would have conducted a pre-filing investigation and seen how weak "hotel" names are and how the U.S. Patent and Trademark Office and courts routinely took exception. Once again, it is impossible to conceive of a weaker case.

### 6. The District Court Ignores Its Own Words

As part of the opinion to deny an injunction and a finding there was not a "mere possibility" of victory, the District Court found there was no secondary meaning, no enforceable mark, and concluded "[t]his, indeed, is 'an uphill battle' for which LHO has yet to enlist." (Appx. A-77). One wonders if "uphill battles" are cases which stand out from others. In this case, the District Court did not only describe Appellee's case as an "uphill battle" but added that Appellee "has yet to enlist." This statement really means "there is nothing here at this point in time." Despite this conclusion in the case, the District Court reverted back to old habits and considered that bad faith was required to award fees. Since the District Court used the wrong "bad faith" analysis, it considered its previous work irrelevant. In fact, the District Court had already opined as to the weakness of Appellee's legal and factual position. Nevertheless, this conclusion was not used in the District Court's opinion.

### 7. Conclusion

The District Court failed to conduct a proper analysis of the weakness of Appellee's case as required under *Octane*. The weakness of Appellee's case can alone be enough to determine that a case is exceptional under Octane. Here, the District Court failed to conduct an analysis using the totality of the circumstances and instead, ignored multiple key and material components of the analysis. the District Court ignored that (a) this was only a rare weak Common Law case, (b) it was filed dead against a binding and controlling precedent with zero chance to prevail, (c) Appellants owned Hotel Chicago LLC and the dba Hotel Chicago and

31

Illinois law makes it illegal for Plaintiff – Appellee to operate as 'Hotel Chicago,' (d) the exceptionally weak expression 'Hotel Chicago' stood rejected by the U.S. Patent and Trademark Office, (e) Plaintiff had a past pattern of filing for protection when it figured it could yet held, (e) legal precedents show these marks are chronically weak both in Court and at the Trademark Office, and (f) the District Court ignored its own previous conclusions as to the weakness of the case as filed when it denied the injunction. This was not a 'totality' of the circumstances test.

D.     ISSUE (D): THE DISTRICT COURT ERRONEOUSLY ADDED ARGUMENTS RATHER THAN RELYING ON EVIDENCE

As shown in the above Issue (c), the District Court appears to have been selective in its use of arguments. In denying Appellee's request for a preliminary injunction in this case wrote, "[t]he Seventh Circuit agreed with the Court below 'that consumer confusion does not exist within the scope of an infringement claim when the mark is not entitled to trademark protection,' and it held that the Court did not err in its failure to examine it." (Appx. A-88 citing *Platinum*, 149 F.3d at 729). In comparison, the District Court, in the appealed decision denying Appellant's request for fees, wrote "LHO also provided evidence that it owned the mark, had priority to the mark, and evidence of numerous instances of customer confusion … LHO's evidence ultimately fell short at the preliminary injunction stage, but its arguments and evidence were not so exceptionally weak so as to make this case 'stand out.'" (Appx. A-6-7). As correctly stated earlier by the District Court,

customer confusion does not exist in the scope of an infringement claim when the asserted mark is not entitled to trademark protection.[11] The District Court erroneously relies on this red herring to support its conclusions. Additionally, confusion is irrelevant to the strength of the case as filed since there is no presumption of enforceability under Common Law mark. Had Appellee enforced a registered mark this may be different but here, Appellee had no such presumption.

The District Court additionally bolsters the support for its conclusions by relying on the Magistrate's report that the District Court earlier admits requires independent review. Furthermore, the Magistrate's report (Appx. A-29) was not based on the evidence presented by the parties at the evidentiary hearing after conducting limited discovery.

The District Court, discussing the Magistrate's report, states that the law "requires the district judge to decide the case based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." (Appx. A-62 citing *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013)). The District Judge gave the report "no presumptive weight" (probably since she did not benefit from all the evidence and the hearing) but shifts

---

[11] When a party decides to use a generic or descriptive word (e.g., Television for selling televisions) and then enter the market using this word, it alone is responsible for consumer confusion it creates, not its competitors who also use the word.

gears in the opinion denying Appellants' request for fees. The District Court stated "In fact, Magistrate Judge Cox believed that the preliminary injunction should have been granted, showing that the case was not unmeritorious. Accordingly, Defendants have not proven that LHO's case was exceptionally weak or frivolous." (Appx. A-7). The Magistrate's report should be given no weight since the Magistrate did not have the benefit of the evidence provided at the evidentiary hearing. Furthermore, the District Court imposes an "unmeritorious" standard and not simply the "uncommon" standard dictated by *Octane*. Truth is, this case "stands out" from others and is "uncommon" because it is not everyday a District Judge ignores the recommendations of the Magistrate and also when a binding precedent was hidden from the Magistrate. Under a bad faith analysis, the confusion from the Magistrate might be relevant, but under *Octane*, this has no influence on the weakness of the legal and factual case. The District Court's decision is in error because it relies on the Magistrate's report and the legally non-existent apparition of customer confusion.

### E.  ISSUE (E): UNDER ANY STANDARD OF REVIEW, THIS CASE STANDS OUT FROM OTHERS AND IS EXCEPTIONAL

#### 1.  THE STANDARD OF REVIEW

If this humble body finds the District Court erred and applied, in whole or in part, the old *Burford* subjective standard, the *de novo* standard must be applied, if not, the 'no reasonable person' standard must be used. Each is described below:

(a)  If This Court Finds The District Applied A Subjective Test, The Standard Is "Clear Error or De Novo" Review

There are three standards of review, one to a pure factual finding, a second to a mixed question of law and fact, and the final to a pure question of law. "We review the district court's findings of fact for clear error, and review its conclusions of law *de novo.*" *Frentz v. Brown*, 876 F.3d 285, 293 (7th Cir. 2017), citing *In re Rovell*, 194 F.3d 867, 870 (7th Cir. 1999). Under these standards, an appellate court may substitute its own judgment for that of the trial court on a conclusion of law. *United States v. United States Gypsum Co.*, 333 U.S. 364, 394 (1948). While a fee determination is one of fact, it relies upon legal guidance. In this case, the legal standard for the award of fees was changed in the successful appeal in this case and, as shown at Section B, was again misapplied. In this context, the appropriate standard of review is *de novo* for conclusion of law.

(b)        Otherwise the Standard Is "No Reasonable Person"

"A decision to award attorneys' fees under the Lanham Act is firmly committed to the district court's discretion…" *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1099 (7th Cir. 1994). "We normally review for abuse of discretion a district court's denial of fees under § 1117(a)." *LHO Chicago River, L.L.C., v. Joseph Perillo, et al.*, 942 F.3d 384, fn 3 (7th Cir. 2019). "Abuse of discretion is a highly deferential standard of review and [a court] will conclude an abuse occurred only when no reasonable person could take the view adopted by the trial court." *Lynch v. City of Milwaukee*, 747 F.2d 423, 426 (7th Cir. 1984). This standard is referred below as the no reasonable person standard.

2. <u>OCTANE IS NOT THAT COMPLICATED – THIS IS A CASE THAT CLEARLY STANDS OUT FROM OTHERS BOTH ON THE WEAKNESS OF THE LEGAL/FACTUAL CASE AND THE LITIGATION CONDUCT</u>

"An 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *LHO Chicago River, L.L.C.,* 942 F.3d at 386 quoting *Octane*, 572 U.S. at 554.

"The Court [in *Octane*] reached this holding by construing the term 'exceptional' in accordance with the word's ordinary meaning. In particular, while highlighting the identical language shared by the Patent and Lanham Acts, the Court relied on *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, a trademark case in which the D.C. Circuit interpreted the term 'exceptional' in § 1117(a) to mean "uncommon" or "not run-of-the-mill." *LHO Chicago River, L.L.C.,* 942 F.3d at 387 (internal citations omitted). This Appellate Court provided further clarification and confirmed that bad faith is not required and that weak trademark cases can be exceptional. This Court stated, "[f]or example, while *Brook*s permitted attorney fees against a party engaging in sanctionable litigation tactics, such a heightened level of misconduct is not always present in a substantively weak case or a case in which a litigant acts simply 'unreasonably.'" *LHO Chicago River, L.L.C.,* , 942 F.3d at 387 discussing *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (Fed.

36

Cir. 2005). *Octane* stands for the notion that in Lanham Act cases, the standard to award fees is more flexible and can be given more easily in cases that simply stand out, are substantially weak on the merits, or are uncommon / not run-of-the-mill.

    (a)        The Court Admits Litigation Conduct Was Bad – The Email Shows Bad Faith Intent at Filing And No Prefiling Analysis Was Conducted

As part of the denial of fees (Appx. A-3), the District Court talking about the "silver bullet" email finds: "We note that this email gives some reason for pause. However, this evidence does not foreclose the possibility that LHO had a good-faith belief that it acquired secondary meaning for the mark in the time since the email and marketing plan were published." (Appx. A-8). Correcting the standard of evidence, this Court must find that the District Judge found by a preponderance of the evidence that the email shows – more likely than not - that LHO did not have a good-faith belief that it had acquired secondary meaning and thus knew it had an enforceable mark. It must find the email evidence demonstrates that the case as filed was weak beyond repair.

The District Court additionally describes that Appellee's response to Appellants' assertion of no pre-filing investigation was only attorney argument attacking Appellants' position. (Appx. A-9). Appellee's did not provide rebuttal evidence. Again, the District Court based its conclusion not by weighing evidence and instead wrote "Lastly, even if LHO did not conduct a prefiling analysis, LHO's case was not so extremely unmeritorious as in *Octane Remand*." (Appx. A-9). This Circuit can find, as a matter of law, the District Court found there was no evidence

of a pre-filing analysis. In regards to litigation abuse, the District Court concluded, "while these actions were certainly bad, we do not believe they were so egregious and reprehensible to make the case 'stand out' …" (Appx. A-11). Once again, as a matter of law, Appellee's litigation conduct was proven to be "bad."

(b)       In Denying The Injunction, The District Court Did Not Mince Words Creating An Unrebutted Presumption The Case Is Weak And Stands Out From Others

Back on February 3, 2017, the District Court did not mince words. "We harbor many doubts [if LHO will be able to prove secondary meaning sufficient to receive protection for the mark.]" (Appx. A-65). "The Seventh Circuit has consistently held that 'a 'likelihood of success' exists if the party seeking injunctive relief shows that it has a 'better than negligible' chance of succeeding on the merits.'" (Appx. A-65 quoting *Meridian Ins. Grp., Inc.,* 128 F.3d 1111, 1115 (7th Cir. 1997)). "This is an admittedly low requirement, and is simply a threshold question." (Appx. A-64 quoting *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.,* 549 F.3d 1079, 1085 (7th Cir. 2008)). The District Court then concluded "[w]e hold that it [LHO] has not met its burden of demonstrating that it has a 'better than negligible' chance of proving that the would-be 'Hotel Chicago' mark has acquired secondary meaning, rendering it protectable." (Appx. A-66).

The District Court further described the weakness of Appellee's case in denying its request for a preliminary injunction. Not only did the District Court state that Appellee faced an "uphill battle" to demonstrate a protectable mark but also that it had "yet to enlist." (Appx. A-77). The District Court further describes

the failures of Appellee in obtaining the only evidence that might save its case, namely consumer surveys and testimony. (Appx. A-77). Yet, Appellee "did not provide evidence of factors (4) or (5)—consumer testimony and consumer surveys—at the hearing." (*Id.*) "LHO's would-be mark is likely a weak descriptive mark..." (Dkt. 96, page 33/45). Furthermore, the District Court agreed with Appellant's assessment of the documentary evidence in this case and stated "In fact, in internal documents, LHO admitted that a weakness of the River North Hotel is that it 'has yet to establish a real identity in the market.'" (Appx. A-87). "LHO's would-be mark is likely a weak descriptive mark, as acknowledged by Magistrate Judge Cox." (*Id.*)

"[A]n 'exceptional' case is simply one that stands out from others with respect to the <u>substantive strength of a party's litigating position (considering both the governing law and the facts of the case)</u> or the unreasonable manner in which the case was litigated." *LHO Chicago River, L.L.C.,* 942 F.3d at 386 quoting *Octane*, 572 U.S. at 554. Here the District Court admits and finds, as a matter of law the litigating position is the weakest possible or imaginable. Any reasonable person would find this case to "stand out" from others and it is pathetically weak from the standpoint of trademark law not even meeting the "mere possibility" standard.

(c)     The Damming Email Must Be Admitted For What It Says

Appellee produced one 'silver-bullet' email. The full email is reproduced below.

**From:** Jennifer Collins
**Sent:** Thursday, September 12, 2013 5:39 PM
**To:** Michael D. Barnello; Alfred Young
**Cc:** Joanna Zook
**Subject:** Hotel Chicago - Name Change

As you know, because we cannot trademark the name Hotel Chicago, our best protection is to start using it to build name equity.

I spoke with Ted Darnall to better understand the name communication channels. They are building out the BT copy/system now and that will be seen by travel managers and the Marriott sales team soon. The website won't go live until around 30 days prior to conversion.

Ted said that most operators will assume the new name is protected. Most assumed that Starwood had W trademarked but they could not because you cannot trademark a letter (Ian will be disappointed).

Our risk is that someone else wants to do this and we have a rush to market. Obviously no one involved in this project has heard any grumblings to that effect. The domain HotelChicago.com is taken but the site takes you to "Resort Vacations to Go" so it seems that was a buy to better someone's SEO. We will use TheHotelChicago.com.

Please let me know if you have any questions or want any more information.

Thanks.

**Jennifer L. Collins**
*Vice President*
LaSalle Hotel Properties (NYSE: LHO)
3 Bethesda Metro Center, Suite 1200
Bethesda, Maryland 20814
301.941.1517 office
917.715.2477 mobile
301.941.1559 fax

(Appx. A-171).

The above reads in part: "As you know, because we cannot trademark the name Hotel Chicago, our best protection is to start using it to build name equity… Ted said that most operators will assume the new name is protected… Our risk is that someone else wants to do this and we have a rush to the market." (Appx. A-171). Looking at the above, the District Court found, "[w]e note that this email gives some reason for pause. However, this evidence does not foreclose the possibility that LHO had a good-faith belief that it acquired secondary meaning for the mark in the time since the email and marketing plan were published." (Appx. A-8) (emphasis added). The Court, had it used a preponderance of the evidence standard, would

have concluded that this email stood for what it was. Appellee did not think it could obtain trademark protection for this name, and more importantly knew enforcement would be a problem. The fact that Appellee had previously filed for previous names of the same hotel including, HOUSE OF BLUES HOTEL® and HOTEL SAX® (see Appx. A-169) but not for HOTEL CHICAGO reinforces this pure bad faith, and demonstrates that Appellee knew it had no rights and this case, as filed, was exceptionally weak on the merits. This email is evidence the case as filed was weak but known to be weak. There is no rebuttal statement, affidavit, or evidence that cast any shadow on the above email. Instead, Appellee sought to evade discovery on this very topic. In the District Court's ruling, this email is not used to look at the inherent weakness of the case filed. (Appx. A-7, Sec. II).

(d)         The District Court Found This Litigation Was "Bad"

"[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) <u>or the unreasonable manner in which the case was litigated.</u>" *LHO Chicago River, L.L.C.,* 942 F.3d at 386 quoting *Octane*, 572 U.S. at 554 (emphasis added).

While Appellants believe the case as filed was so weak so as to justify being designated as exceptional, the case also could be deemed exception based on the unreasonable manner in which it was litigated. To justify this position, Appellants provided ample reasons that were glossed over in the District Court's opinion and that were left unrebutted by Appellee. Appellants' evidence included the following.

(a) Appellee did not conduct a pre-filing analysis.

(b) Appellee added Mr. Joseph Perillo in the Complaint for no legal reason.

(c) The depositions leading were riddled with multiple types of abuse.

(d) The Appellee's appeal of a denial of an injunction was judicial waste.

(e) The Appellee's covenant not to sue never was given.

The District Court's opinion rejected some of this evidence despite having no evidence to the contrary and provided only conclusory statements to justify its decision. The District Court wrote: "[l]astly, even if LHO did not conduct a prefiling analysis, LHO's case was not so extremely unmeritorious as in *Octane* Remand." (Appx. A-9). The District Court admits there was no pre-filing efforts but explains that since the case filed was not "so extremely unmeritorious" that simply being able to argue the injunction, is sufficient to support this case. The District Court also stated "LHO shows that it had reason to believe that Perillo may have been involved." (Appx. A-10). Lawyers do not add parties simply because they have "reasons to believe" a name should be added to a pleading. Jeff Bezos, the CEO of Amazon® should not be added to a pleading for shock value when Amazon is a party of the suit.

The District Court also stated "Defendants next argue that the depositions were 'riddled with abuse.' Defendants say that LHO's witnesses lacked personal knowledge of important information, were evasive, and that LHO repeatedly questioned a defense witness about an unrelated criminal matter. Defendants argue that this was abusive and wasteful. LHO contents these actions are 'rather

commonplace discovery complaints.' While these actions were certainly bad, we do not believe they are so egregious and reprehensible to make the case 'stand out' from others and merit fee-shifting." (Appx. A-11)(emphasis added). The Court admits here "these actions were certainly bad," but because it has the incorrect "bad faith" standard in mind, it refused to find for exception under *Octane*. In addition, this case 'stands out' because of the aggregated circumstances of the entire case.

        (e)        The Totality of the Circumstances Shows This Case is Exceptional

Assuming for the sake of a conservative argument, this Court must review under the "no reasonable person" standard, it is easy to show any reasonable person would think this case is common and does stand out from others. The reasonable person would be told: (a) Plaintiff held only an extremely weak Common Law trademark claim, (b) Evidence proves Plaintiff's management believed it had no enforceable mark and could not even file for one, (c) Evidence of past filings confirms (b), (d) the District Court concluded Plaintiff conducted no pre-filing investigation, (e) Plaintiff used the asserted expression in violation of the Illinois Assumed Name Act, (f) Plaintiff ignored Defendants' corporate ownership and DBA, (g) Plaintiff ignored a binding precedent from the Seventh Circuit killing all hopes as Plaintiff's case is weaker on every prong analyzed in the previously decided case, (h) the District Court found the case is so weak it does not meet a "mere possibility" of victory, (i) the District Court found the mark is weak and descriptive, (j) looking at the litigation conduct, the District Court confirms litigation conduct was "bad", (k) other unbiased trademark histories, case law, and other filings point to the

weakness of Plaintiff's case, (l) Plaintiff was reminded by the Magistrate and District Judge to secure survey evidence and none was presented by the Plaintiff, and finally (m) the District Court found that, "[t]his, indeed, is 'an uphill battle' for which LHO has yet to enlist."

If this is a case that does not 'stand out' from others, one must wonder what is? Such a ruling simply eviscerates *Octane* in this District and maintains the pre-*Octane* bad faith standard. If ignoring a binding precedent, asserting the most descriptive mark, all while knowing that trademark rights have not been established is not enough, nothing is.

## CONCLUSION

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014), reached the U.S. Supreme Court from the District of Minnesota (*Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, No. 0:09-cv-00319 (D. Minn. Swept. 6, 2011). It arrived via the Federal Circuit, 496 F.App'x 57 (Fed. Cir. 2012). In the opinion penned by Justice Sotomayor remanding the case to District Judge Ann D. Montgomery wrote the following.

> "The court explained that although it had rejected ICON's infringement arguments, they were neither "frivolous" nor "objectively baseless." Id., *2-*3. The court also found no subjective bad faith on ICON's part, dismissing as insufficient both "the fact that [ICON] is a bigger company which never commercialized the '710 patent" and an e-mail exchange between two ICON sales executives, which Octane had offered as evidence that ICON had brought the infringement action "as a matter of commercial strategy…. We granted certiorari, 570 U.S. __

(2013), and now reverse." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 546 (2014).

The U.S. Supreme Court's argument expressly rejected the frivolous, objectively baseless standard of strength and bad faith litigation which Appellants face in this case. The District Court erroneously applies the wrong standard and, for example, stated "[Appellee] responds that Defendants have not proven that this case involved 'frivolousness' or 'objective unreasonableness' and that the lack of consumer testimony and consumer surveys is not exceptional. We agree with [Appellee]." (Appx. A-5,6).

Referring back to the Supreme Court's decision in *Octane*, the Supreme Court's opinion added a footnote discussing the rejected treatment of a damning email:

One e-mail, sent from ICON's Vice President of Global Sales to two employees, read: " 'We are suing Octane. Not only are we coming out with a greater product to go after them, but throwing a lawsuit on top of that.' " 2011 WL 3900975, *4. One of the recipients then forwarded that e-mail to a third party, along with the accompanying message: " 'Just clearing the way and making sure you guys have all your guns loaded!' " Ibid. More than a year later, that same employee sent an e-mail to the Vice President of Global Sales with the subject, "'I heard we are suing Octane!' " Ibid. The executive responded as follows: " 'Yes— old patent we had for a long time that was sitting on the shelf. They are just looking for royalties.' " Ibid. The District Court wrote that "in the light most favorable to Octane, these remarks are stray

comments by employees with no demonstrated connection to the lawsuit." Ibid.

*Octan*e, 572 U.S. at fn 5 (emphasis added).

The Supreme Court reversed the district court's "in the light most favorable" standard. In an eerie similarity, the email in this case is also from the Vice-Present of the Appellee and the District Court in this case makes the same mistake as in *Octane* when it wrote "[w]e note that this email gives some reason for pause. However, this evidence does not foreclose the possibility that LHO had a good-faith belief that it acquired secondary meaning for the mark in the time since the email and marketing plan were published." (Appx. A-8). The U.S. Supreme Court remanded the case and the district court in *Octane* awarded $1,633,333 in fees. *Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 127 F. Supp. 3d 1004, 1008 (D. Minn. 2015) (Appx. A-154). To guide the District Court, Appellants analogized every prong of the *Octane* remand with the current case. (Appx. A-132).

Putting all legalese aside, what happened here? A party who rebranded its hotel three times in a decade had picked "Hotel Chicago." It attacked blindly without any investigation or filing. The owner of a hot dog stand located in New York should not attack a competitor claiming it owns "New York Hot Dog" without a great degree of caution, a certificate, something … The owner of a restaurant on the shore of a lake should not attack blindly a competitor claiming it owns "Lake Restaurant" absent some level of diligence. For crying out loud, at a minimum the owners of New York Hot Dog and Lake Restaurant should discover if there is a precedent and make sure that at least one factor exceeds the binding precendent's

decision. This case stands out from others in many ways and no reasonable person, knowing how trademark law functions could reach a different conclusion.

WHEREFORE, Defendants – Appellants respectfully request that this Court to give guidance as to *Octane,* reverse the decision of the District Court in denying to designate the present case as exceptional, and to award attorneys' fees and related expenses.

Respectfully submitted,

Dated:  28 October 2020

/s/ Alain Villeneuve

Alain Villeneuve
Duane Morris LLP
190 S. LaSalle St., Suite 3700
Chicago, IL 60603
(312) 499-6739
(312) 277-3967
AVilleneuve@duanemorris.com

Attorney for Appellants

## CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7)

The undersigned, counsel of record for the Defendants-Appellants, Joseph Perillo, et al., furnishes the following in compliance with F.R.A.P. Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P. Rule 32(a)(7) for a brief produced with a proportionally spaced font.

The length of this brief is 11,994 words.


Dated: 28 October 2020

/s/ Alain Villeneuve
Alain Villeneuve
Duane Morris LLP
190 S. LaSalle St., Suite 3700
Chicago, IL 60603
(312) 499-6739
(312) 277-3967
AVilleneuve@duanemorris.com

Attorney for Appellants

## CERTIFICATE OF SERVICE

The undersigned, counsel of record for the Defendants-Appellants, Joseph Perillo, et al., hereby certifies that on October 28, 2020, that the foregoing was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that services will be accomplished by the CM/ECF system.


Dated: 28 October 2020                    /s/ Alain Villeneuve

                                          Alain Villeneuve
                                          Duane Morris LLP
                                          190 S. LaSalle St., Suite 3700
                                          Chicago, IL 60603
                                          (312) 499-6739
                                          (312) 277-3967
                                          AVilleneuve@duanemorris.com

                                          Attorney for Appellants

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by Circuit Rule 30(a) and (b) are included in the appendix.


Dated:  28 October 2020

/s/ Alain Villeneuve

Alain Villeneuve
Duane Morris LLP
190 S. LaSalle St., Suite 3700
Chicago, IL 60603
(312) 499-6739
(312) 277-3967
AVilleneuve@duanemorris.com

Attorney for Appellants

# ATTACHED REQUIRED SHORT APPENDIX

## Short Appendix – Table of Contents

1.  Order of the District Court Denying Defendants' Renewed Motion for Attorneys' Fees Under 15 U.S.C. § 117(a) (Dkt. 198)...........................................A-3

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LHO CHICAGO RIVER, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 16 C 6863 |
| | ) | |
| ROSEMOOR SUITES, LLC, PORTFOLIO | ) | |
| HOTELS & RESORTS, LLC, and | ) | |
| CHICAGO HOTEL LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants Rosemoor Suites, LLC, Portfolio Hotels & Resorts, LLC, and Chicago Hotel, LLC's (collectively, "Defendants") renewed motion for attorney's fees under 15 U.S.C. § 1117(a). For the following reasons, the Court denies the motion.

## <u>BACKGROUND</u>

Plaintiff LHO Chicago River ("LHO") is a Delaware limited liability company with a principal place of business in Illinois. Defendants are Illinois limited liability companies with principal places of business in Illinois. Both LHO and Defendants operate separate hotel businesses in Chicago, Illinois, each called "Hotel Chicago," which gave rise to the underlying trademark infringement and unfair competition claims in this dispute.

APPENDIX PAGE A-3

On June 30, 2016, LHO filed its initial complaint against Defendants, alleging violations of the Lanham Act, 15 U.S.C. § 1125(a), the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/1 et seq., and Illinois common law.  After almost two years of litigation, LHO moved for voluntary dismissal of its claims with prejudice. The Court granted the dismissal and entered judgment on February 21, 2018.

On April 1, 2019, the Court denied Defendants' motion for attorney's fees under the Lanham Act, 15 U.S.C. § 1117(a), applying the Seventh Circuit's "abuse of process" standard.[1]  On appeal, the Seventh Circuit abandoned the "abuse of process" standard and adopted the U.S. Supreme Court's standard in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014), which interpreted an identical attorney's fee provision in the Patent Act.  *LHO Chicago River, LLC v. Perillo*, 942 F.3d 384, 388–389 (7th Cir. 2019).  On February 26, 2020, Defendants filed the instant renewed motion for attorney's fees.

## **LEGAL STANDARD**

Under 15 U.S.C. § 1117(a), "[t]he court in exceptional circumstances may award reasonable attorney fees to the prevailing party."  A case is considered "exceptional" when it "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane*, 574 U.S. at 554.  This

---

[1] *See* 1:16-cv-6863, Dkt. # 175.

inquiry is done on a case-by-case basis in which the Court considers the totality of the circumstances. *Id.*

The Court considers a nonexclusive set of factors when determining whether to award attorney's fees. *Perillo*, 942 F.3d at 386. "Those factors include 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* (quoting *Octane*, 572 U.S. at 554 n.6). The prevailing party must prove that the case is exceptional by a preponderance of the evidence. *Octane*, 572 U.S. at 557–558.

## DISCUSSION

Defendants argue that they are entitled to fees because this case presents facts similar to those considered by the District Court on remand in *Octane*. *Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 112 F. Supp. 3d 888 (D. Minn. 2015) ("*Octane Remand*"). The Court in *Octane Remand* awarded fees because of both an exceptionally weak litigation position and an unreasonable manner of litigation by the plaintiff. We address each issue in turn.

### I.     Substantive Strength of Litigation Position

Defendants argue that this case is "the weakest imaginable" because the mark was, at best, a descriptive mark with no secondary meaning. LHO responds that Defendants have not proven that this case involved "frivolousness" or "objective unreasonableness"

3

and that the lack of consumer testimony and consumer surveys is not exceptional. We agree with LHO.

Where a party sets forth some good faith argument in favor of its position, it will generally not be found to have advanced "exceptionally meritless" claims. *Intex Recreation Corp. v. Team Worldwide Corp.*, 77 F. Supp. 3d 212, 217 (D.D.C. 2015). Conversely, "Courts have awarded attorneys' fees . . . where a party advances arguments that are particularly weak and lack support in the record or seek only to re-litigate issues the court has already decided." *Octane Remand*, 112 F. Supp. 3d at 892.

In *Octane Remand*, the District Court found that the plaintiff's case was exceptionally weak because the arguments advanced the plaintiff "bore no relation to what the . . . patent disclosed and covered. The claim language, specification, prosecution history, inventor testimony, and Icon's own expert testimony posed major obstacles to Icon's success on the merits." *Id.* at 895.

The same cannot be said here. During the underlying proceedings, LHO argued that the "Hotel Chicago" mark was a descriptive mark with secondary meaning. LHO provided evidence of "significant, widespread marketing efforts, global promotion, and sales volume" to demonstrate that the mark acquired secondary meaning. LHO also provided evidence that it owned the mark, had priority to the mark, and evidence of numerous instances of customer confusion. While, as Defendants argue, LHO used the mark for a short period of time and had no consumer surveys or testimony, "length of time by itself is not a determinative factor," and the lack of consumer survey evidence

4

is not fatal. *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 728 (7th Cir. 1998). LHO's evidence ultimately fell short at the preliminary injunction stage, but its arguments and evidence were not so exceptionally weak so as to make this case "stand out." In fact, Magistrate Judge Cox believed that the preliminary injunction should have been granted, showing that the case was not unmeritorious. Accordingly, Defendants have not proven that LHO's case was exceptionally weak or frivolous.

## II. Unreasonable Manner of Litigation

Defendants next argue that this case is exceptional because of LHO's manner of litigation. To support this argument, Defendants first provide an email between members of LHO management that shows they knew the "Hotel Chicago" mark could not be afforded trademark protection and reflects an improper motivation in bringing the suit. The email reads in part, "[B]ecause we cannot trademark the name Hotel Chicago, our best protection is to start using it to build name equity." Similarly, Defendants also argue that an internal marketing plan from 2015,[2] which identified a "weakness" in the brand identity of the hotel, also shows that the suit was frivolous or brought for an improper purpose.

Defendants attempt to liken this evidence to the emails considered by the district court in *Octane Remand.* 112 F. Supp. 3d at 898. The emails in *Octane Remand*, sent after the litigation began, stated that the patent was "sitting on the shelf" for over ten years and that the plaintiffs were going to get "royalties plus compensation." *Id.* The

---

[2] Filed under seal.

District Court noted that the details in these emails were not publicly available and suggest that the information was learned from upper management. *Id.* Thus, the Court concluded, it was more likely than not that the views expressed in the email were the views of those involved in the decision to bring the lawsuit and reflected an improper motive in bringing the suit. *Id.*

LHO argues that the email is a statement from a non-lawyer who is confusing the terms "trademark" and "trademark protection." Moreover, LHO argues that this email from 2013 does not provide evidence of frivolousness. In regard to the marketing plan, LHO notes that a mark can acquire secondary meaning in a short period of time.

We note that this email gives some reason for pause. However, this evidence does not foreclose the possibility that LHO had a good-faith belief that it acquired secondary meaning for the mark in the time since the email and marketing plan were published. Unlike the emails in *Octane Remand*, the evidence here does not directly show the motivations of LHO management at the time the suit was brought because the evidence was from years before the litigation was commenced. Accordingly, we do not believe the email and marketing plan show that LHO believed the case was frivolous when the case was filed or that the case was brought for an improper purpose.

Defendants next argue that LHO did not conduct a prefiling analysis. The District Court in *Octane Remand* noted, "The absence of [evidence of] a pre-filing analysis, when combined with Icon's exceptionally weak litigation position, leads to the inference that the pre-filing investigation resulted in a conclusion that probable success on the

6

merits was remote." *Id.* at 897. Defendants say that if LHO conducted a pre-filing analysis comparing LHO's case to Seventh Circuit precedent in *Platinum*, 149 F.3d 722, it would have realized the case is weak. Moreover, Defendants argue that LHO knew or should have known that Defendants filed a trademark application with the U.S. Patent and Trademark Office (USPTO), which was denied by the USPTO because it was a descriptive mark, and registered the name "Chicago Hotel LLC, dba Hotel Chicago" with the Illinois Secretary of State.

LHO responds that the denial of the Hotel Chicago mark by the USPTO is not evidence that they brought a pretextual or meritless claim. Moreover, LHO argues that their claims were not precluded by *Platinum* because the factors in that case are not dispositive and there are several "favorable precedents" in the Seventh Circuit.

The fact that Defendants registered "Chicago Hotel, LLC" and "Hotel Chicago" with the Illinois Secretary of State merely demonstrates the intent to use a mark and does not show any rights to the mark. *See Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 504 (7th Cir. 1992). Similarly, that the USPTO denied the mark is not evidence showing the case was brought frivolously, as LHO believed it had common law rights to the mark and that the mark had acquired secondary meaning. Lastly, even if LHO did not conduct a prefiling analysis, LHO's case was not so extremely unmeritorious as in *Octane Remand*. LHO provided evidence and relied on Seventh Circuit precedent to argue in good faith that it was entitled to a preliminary injunction, and ultimately final judgment. While this Court denied the preliminary injunction, Magistrate Judge Cox

recommended that the preliminary injunction be granted, showing that LHO's case was not wholly unmeritorious.  A prefiling analysis would not have shown LHO that it had no chance to succeed on the merits.  Accordingly, this evidence does not show litigation misconduct by LHO in bringing this case.

Defendants next argue that LHO wrongfully sued Joe Perillo ("Perillo").  In *Octane Remand*, the plaintiff included a peripheral party "to establish venue in an inconvenient and high-cost district."  112 F. Supp. 3d at 897.  Defendants say that no justification has been given for adding Perillo as a party.  Additionally, Defendants say that LHO repeatedly attacked Perillo by questioning him about a bedbug incident that Defendants argue is not relevant to this case.

LHO argues that it had good faith to involve Perillo, as he is the sole member of Defendants Chicago Hotel, LLC and Rosemoor Suites, LLC.  Additionally, LHO argues that Perillo holds himself out as the owner of the Hotel Chicago in the Medical District, providing several news articles indicating such.  Lastly, LHO contends that it had a good-faith belief to ask the bedbug questions, because if there was confusion between the two hotels, the bedbug issue could cause reputational harm.

We do not believe that Perillo was sued in bad faith.  Unlike the peripheral party in *Octane Remand*, Perillo was not sued just to establish venue.  The explanation and evidence proffered by LHO shows that it had reason to believe that Perillo may have been involved in the alleged trademark infringement, as he is sole member of two of the Defendants.

8

Defendants also note that LHO never asked the General Manager of the Medical District hotel, Imran Jivani, about the bedbug incident, but repeatedly asked Perillo about the bedbug issue despite the Court's objections. But this appears to be untrue. According to the transcript cited by Defendants,[3] Jivani *was* asked about the bedbug incident, and the Court objected. Prior to this, Perillo was asked two questions about the incident without issue. Accordingly, we do not believe this evidence proves litigation misconduct by LHO with regards to Perillo.

Defendants next argue that the depositions were "riddled with abuse." Defendants say that LHO's witnesses lacked personal knowledge of important information, were evasive, and that LHO repeatedly questioned a defense witness about an unrelated criminal matter. Defendants argue that this was abusive and wasteful. LHO contends these actions are "rather commonplace discovery complaints." While these actions were certainly bad, we do not believe they are so egregious and reprehensible to make the case "stand out" from others and merit fee-shifting. *See Octane*, 572 U.S. at 554 ("an 'exceptional' case is simply one that stands out from others").

Defendants next argue that LHO's first appeal, which LHO ultimately dismissed, was judicial waste. Defendants say LHO forced it into a "pointless and costly" mediation and needlessly delayed the appeal. LHO argues, and we agree, that LHO was entitled to appeal the denial of the preliminary injunction as a matter of right. 28 U.S.C. 1292(a). Additionally, as we noted in the previous Order, participating in

---

[3] 1:16-cv-6863, Dkt. # 93.

mediation signals an intent to end the litigation, not to needlessly prolong it. Accordingly, the evidence does not indicate litigation misconduct by LHO with respect to the first appeal.

Finally, Defendants argue that LHO did not provide the Defendants with a covenant-not-to-sue. Defendants say that they fear being sued by LHO's new owners, Pebblebrook Hotel Trust. LHO argues that this evidence is irrelevant because settlement negotiations cannot be used as evidence of bad-faith litigation conduct. We believe that this evidence, without more, is not evidence of litigation misconduct as it merely shows that the parties did not agree on the terms of a covenant-not-to-sue. Defendants do not provide evidence that LHO was unreasonable in negotiations, for example. Thus, the evidence does not show litigation misconduct by LHO with respect to the covenant-not-to-sue.

Considering the totality of the circumstances, the Defendants have not proven by a preponderance of the evidence that this case "stands out" from other cases. Accordingly, an award of attorney's fees is not appropriate in this case.

## CONCLUSION

For the reasons mentioned above, the Court denies Defendants' renewed motion for attorney's fees. It is so ordered.

Dated: 07/15/2020

Charles P. Kocoras
United States District Judge

10